IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SHIRLEY A. LOPEZ,**

    Plaintiff,

vs.                                      Civ. No. 00-980 BB/DJS

**LARRY G. MASSANARI, Acting Commissioner of Social Security,**[1]

    Defendant.

**MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION**[2]

1.  Plaintiff invokes this Court's jurisdiction under 42 U.S.C. §405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner determined that Plaintiff is not eligible for disability insurance benefits. Plaintiff moves this Court for an order reversing the Commissioner's final decision or remanding the matter for a rehearing. The Court will review the Commissioner's

---

[1] Pursuant to Fed.R.Civ.P. 25, Larry G. Massanari, Acting Commissioner of Social Security is substituted for William A. Halter, Acting Commissioner, as the Defendant in this action. Mr. Massanari was designated by President Bush on March 29, 2001.

[2] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. Section 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections with the clerk of the district court within the ten day period allowed if that party seeks appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner applied correct legal standards in making his findings. <u>Williams v. Bowen</u>, 844 F.2d 748 (10th Cir. 1988).

**Administrative History**

2.   Plaintiff applied for Title II and Title XVI benefits on December 16, 1996 alleging a disability since June 2, 1988. Tr. 42. Her applications were denied initially and on reconsideration. The Administrative Law Judge (ALJ) found that Plaintiff was not disabled. Tr. 15. The Appeals Council denied her request for review. Tr. 5-6. The decision of the ALJ therefore became the final decision of the Commissioner for judicial review purposes.

**Statement of the Facts**

3.   Plaintiff alleges a disability due to facial and vocal numbness, severe fatigue from gastric bypass surgery, back problems, post-surgical stomach pain, blood sugar problems, possible depression, heart problems, and inability to use her hands and right leg properly due to pain and numbness. Tr. 42-44, 441-444. Plaintiff was forty years old at the time of the ALJ's decision. She has a General Equivalency Degree. Tr. 19, 132. She has past relevant work experience as a manufacturing worker. Tr. 459.

**Issues**

4.   Plaintiff alleges the ALJ erred in finding that

Plaintiff's alleged mental and physical impairments were not severe.

### The Standard of Review

5. The function of this Court on review is not to try the Plaintiff's claim *de novo*, but to determine upon the whole record whether the Commissioner's decision is supported by substantial evidence. Hamilton v. Secretary of Health and Human Services, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a scintilla but less than a preponderance of the evidence. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Id. It is well settled that if there is substantial evidence to support the Commissioner's decision then that decision must be upheld. However, the district court should not blindly affirm the Commissioner's decision but must instead scrutinize the entire record to determine if the Plaintiff's claim is supported by substantial evidence and the law has been correctly applied. Hogan v. Schweiker, 532 F.Supp. 639, 642 (D.Colo. 1982).

6. The Plaintiff must first make a *prima facie* showing of an impairment which effectively precludes her from returning to her past work. Once that showing is made, the burden shifts to the Commissioner to show: (1) that the Plaintiff, considering her age, education, work experience and physical shortcomings, has the capacity to perform alternative jobs and (2) that these specific

types of jobs exist in significant numbers in the economy.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981); Salas v. Califano, 612 F.2d 480, 482-83 (10th Cir. 1979); Gardner v. Brian, 369 F.2d 443, 446-47 (10th Cir. 1966).

  7. To regularize the adjudicative process, the Social Security Administration promulgated regulations which establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §404.1520.  At the first three levels of the sequential evaluation process, the claimant must show: (1) that she is not engaged in substantial gainful employment;  (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; and (3) that her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1.  If the claimant cannot show that she has met or equaled a listing, she must show at step four that she is unable to perform work she had done in the past.  At the fifth step, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other substantial gainful activity considering her age, education, and prior work experience.  If a determination of disabled or not disabled is found at any step, further inquiry is not required.  20 C.F.R. §404.1520.

  8. Upon reaching the fifth step of the sequential evaluation process, the Medical-Vocational Guidelines (grids) are used in determining whether disability exists.  20 C.F.R. Part 404, Subpt.

P, App. 2. These grids reflect the existence of jobs in the national economy at various residual functional levels by incorporating administrative notice of some occupational publications and studies. 20 C.F.R. §404.1566(d). This aids the Commissioner in determining what specific job types exist in the national economy for the claimant. To apply the grids, the ALJ must make findings of fact as to age, education, work experience, and residual functional capacity. 20 C.F.R. §§404.1545, 404.1563-.1565. These findings of fact are factored into the grids to produce a factual conclusion of disabled or not disabled. 20 C.F.R. §404.1569. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §200.00(e)(2).

  9. Where a claimant presents evidence of both exertional and nonexertional impairments (such as pain, inability to maintain concentration, and substance abuse), the grids are not conclusive but merely form a framework for disability determination. Id. In that situation, the ALJ must make findings on how much a claimant's work ability is further diminished by the nonexertional limitations. Id. If the claimant's nonexertional limitations are significant enough to reduce further his or her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled. Id.; Channel v. Heckler, 747 F.2d 577, 583 (10th Cir.

5

1984).  However, the mere presence of nonexertional impairments does not automatically preclude reliance on the grids.  <u>Ray v. Bowen</u>, 865 F.2d 222, 225 (10th Cir. 1989); <u>Gossett v. Bowen</u>, 862 F.2d 802, 807-08 (10th Cir. 1988); <u>Channel</u>, 747 F.2d at 582 n. 6.

**Discussion**

10.   In his decision, the ALJ found that Plaintiff's alleged impairments were not severe.  This determination was made at step two.  Pursuant to the Secretary's severity regulations, 20 C.F.R. 404.1520(c), 416.920(c)(1986), a step two decision is based on medical factors alone.  It does not include consideration of vocational factors such as age, education or work experience.  Pursuant to the severity regulations, the Plaintiff must make a threshold showing that her medically determinable impairment or combination of impairments significantly limits her ability to do basic work activities, i.e., "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. 404.1521(b), 416.921(b)(1986).  Thus, at step two, Plaintiff has the burden of proof to show she suffered from a severe mental or physical impairment.  Plaintiff failed to carry her burden.  The medical factors do not support such a finding.

*Mental Impairment*

11.   As noted by the ALJ, the Plaintiff was not treated for depression and had no medical history of depression.  Tr. 14. There is no evidence of psychiatric hospitalization or treatment.

The Psychiatric Review Technique Form completed by the Disability Determination Services states that her activities of daily living were intact.  Further there was "no evidence of psychotic ideation or any severe cognitive limitation."  Tr. 14 and 355.

12.   The most extensive  medical evidence on the issue of Plaintiff's alleged mental impairment is the consultative examination performed by Robert Karp, M.D. on March 12, 1997.  Dr. Karp found that Plaintiff was oriented to all three spheres; her judgment was good; she had above-average intelligence; she had no memory problems and had no suicidal thoughts or homicidal ideations."  Tr. 352.  The Plaintiff told Dr. Karp that she did some housework, walked the dog, read, watched TV and cooked. Tr. 351.  It was Dr. Karp's opinion that Plaintiff had a Global Assessment of Functioning (GAF) score of 55.  Tr. 353.  This indicates moderate symptoms or moderate difficulty in social, occupation or school functioning.  American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders, 32 (4th ed. 1994). Dr. Karp diagnosed the Plaintiff with moderately severe depression.  The fact that Dr. Karp diagnosed the Plaintiff with depression does not establish that she had a severe impairment.  Tr. 353.  Coleman v. Chater, 58 F.3d 577, 580 (10th Cir. 1995)(diagnosis alone does not show a mental impairment that prevents Plaintiff from working).

13.   Contrary to Plaintiff's assertions, the ALJ properly relied on the consultative examination by Dr. Karp.  Cf. Hawkins v.

Chater, 113 F.3d 1162, 1165 (10th Cir. 1997)(relying on report by nonexamining physician not mentioned in ALJ's decision to find substantial evidence supporting ALJ's finding of nonsevere impairment).  In the absence of contradictory medical evidence, consultative examinations are substantial evidence.

    14.  It is further important to note that Plaintiff was under the care of many physicians for various surgeries and treatment. She had two pregnancies one of which resulted in the birth of twins. She had a hysterectomy in March of 1981.  In October of 1984 she had gall bladder surgery.  In June of 1988 she underwent gastric bypass surgery for morbid obesity.  In February of 1991 she had a tummy tuck.  Plaintiff's's extensive medical records, for the most part, pertain to her surgeries.  There is no indication in these records that Plaintiff complained of or suffered from depression.

    15.  There are two letters from physicians in the record that state that the Plaintiff cannot work.  Tr. 340 and 345.  Hill Matthews, M.D. wrote a letter on July 6, 1994 that Plaintiff could not work due to a combination of physical and emotional difficulties that could be overcome over time.  Tr. 345.  His opinion is in a short "To Whom It Concern" letter based upon a "brief evaluation." Tr. 345.  There are no records on the evaluation or any records to support his conclusion.  Kenneth Grant, M.D., wrote on December 6, 1994 that the Plaintiff could not perform her past relevant work due to chronic abdominal pain. Tr.

340. Again this was stated in a brief "To Whom It May Concern" Letter. There is no objective medical evidence in his records or elsewhere supporting this position. The ALJ correctly gave little weight to these opinions. They are brief, conclusory and unsupported by the medical evidence. <u>Castellano v. Secretary of HHS</u>, 26 F.3d 1027, 1029 (10th Cir. 1994).

*Physical Impairment*

16. Plaintiff further argues that the Plaintiff has physical impairments that are "severe." Though not delineated, it appears that Plaintiff is arguing that her musculoskeletal problems are severe at step two. The medical record simply do not support that Plaintiff has any severe physical impairments.

17. On June 30, 1997, William Levin, D.O., performed a consultative physical examination of the Plaintiff. He concluded that the Plaintiff did not have "any medically determinable impairment." Tr. 375. Further, as noted by the ALJ, two physicians at the University of New Mexico Health Sciences Center refused to write a letter stating that Plaintiff could not work. Tr. 14, 401. The physician entry specifically states that this refusal was based on the plaintiff's examination and x-rays. On October 2, 1997, another UNM physician reviewed Plaintiff's chart and likewise refused to write a letter stating that Plaintiff was disabled. Tr. 401.

18. As discussed above Plaintiff had undergone many

surgeries.  However, there is no evidence in the record that the surgeries or their underlying causes had any long-lasting debilitating effect on the Plaintiff.

## Recommended Disposition

For these reasons, I recommend that Plaintiff's Motion to Remand be denied.

_____
Don J. Svet
United States Magistrate Judge